ANDREA T. MARTINEZ, United States Attorney (#9313)
CY H. CASTLE, Assistant United States Attorney (#4808)
MARK E. WOOLF, Assistant United States Attorney (WA Bar #39399)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 | Salt Lake City, Utah 84111
Tel: 801.524.5682 | Fax: 801.325.3399 | mark.woolf@usdoj.gov | cy.castle@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| United States of America, | Case No. 2:22-cv-00070-TS |
| Plaintiff, | |
| vs. | |
| $9,016,830.76 Seized from First Internet Bank Account Ending in 4629; | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| $465,936.99 Seized from Meridian Bank Account Ending in 8439; | |
| $33,932.39 Seized from Meridian Bank Account Ending in 2022; | |
| $22,018.81 Seized from Meridian Bank Account Ending 4101; and | Senior Judge Ted Stewart |
| $150,000.00; | |
| Defendants *in Rem*. | |

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America states the following *in rem* action for forfeiture.

## NATURE OF THE ACTION

1. This is a judicial forfeiture action under 18 U.S.C. § 981(a)(l)(C) and 981(a)(1)(A) seeking forfeiture of the Defendant Properties more particularly described at Paragraph 9 herein.

2. The Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(l)(C), which provides that "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C. §] 1956(c)(7))" is forfeitable to the United States. Section 1956(c)(7) further defines "specified unlawful activity" to include "any act or activity constituting an offense listed in [18 U.S.C. §] 1961(1)". *See* 18 U.S.C. § 1956(c)(7)(A).

3. Any offense under 18 U.S.C. § 1014 (relating to fraudulent loan or credit applicaltions) constitutes a "specified unlawful activity." *See* 18 U.S.C. § 1956(c)(7)(D). So too, any offense under 18 U.S.C. § 1343 (relating to wire fraud) constitutes "specified unlawful activity." *See* 18 U.S.C. § 1961(1)(D). Because the Defendant Properties were involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1014 and 1343, they are forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

4. The Defendant Properties are further forfeitable pursuant to 18 U.S.C.

§ 981(a)(1)(A), which provides that "any property, real or personal, involved in a transaction or attempted transaction in violation of section…1957," is subject to forfeiture to the United States. Because the Defendant Properties were involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or are traceable to such property, they are forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this is a civil action commenced by the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1355(a) because this is an "action or proceeding for . . . forfeiture[.]"

6. This Court has *in rem* jurisdiction pursuant to 28 U.S.C. § 1355(b) and (d).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1355(b)(1)(A) because the "acts or omissions giving rise to the forfeiture" occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1395 because (1) the forfeiture accrued in this district, and (2) the Defendant Properties may be found in this district.

## PARTIES

8. Plaintiff is the United States of America.

9. Defendants *in rem* (referred to as "Defendant Properties" throughout this Verified Complaint) are more particularly described as follows:

    a. $9,014,830.76 seized from First Internet Bank ("FIB") account ending in 4629;

    b. $465,936.99 seized from Meridian Bank account ending in 8439;

    c. $33,932.39 seized from Meridian Bank account ending in 2022;

    d. $22,018.81 seized from Meridian Bank account ending 4101; and

    e. $150,000 invested by Allison Baver, through Allison Baver Entertainment, LLC ("ABE"), plus any and all return on that investment, with Company X Productions, LLC ("Company X") for production of a motion picture titled "No Man of God."

10. On or about October 9, 2020, the $9,016,832.76 seized from FIB account ending in 4629, referenced in subparagraph 9(a) herein, was turned over to the Federal Bureau of Investigations ("FBI") by representatives of FIB pursuant to a seizure warrant issued by this Court in *United States v. Baver*, Case No. 2:21-cr-00520-JNP ("Parallel Criminal Proceeding"). The funds have been turned over to the United States Marshals Service ("USMS") in Salt Lake City, Utah.

11. On or about October 9, 2020, the $521,888.19 seized from Meridian Bank accounts ending in 8439, 2022, and 4101, referenced in subparagraphs 9(b)-

(d), was wired directly by Meridian Bank to the USMS in Salt Lake City, Utah pursuant to a seizure warrant issued by this Court in the Parallel Criminal Proceeding.

12. The $150,000 invested by ABE into the production of a motion picture, referenced in subparagraph 9(e), is subject to a restraining order issued by this Court in the Parallel Criminal Proceeding under 21 U.S.C. § 853(e).

13. All Defendant Properties, except for that property referenced in Paragraph 12 and subparagraph 9(e) of this complaint, have been deposited with the USMS, Salt Lake City, Utah in the USMS Seized Asset Deposit Fund Account. The Defendant Properties deposited with USMS remain in the care, custody, and control of the USMS in Salt Lake City, Utah.

## FACTS SUPPORTING FORFEITURE

**The Paycheck Protection Program**

14. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a federal law designed to provide emergency financial to those suffering economic impacts caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for the expansion of others to address the financial hardships caused by the COVID-19 pandemic.

15. The United States Small Business Administration ("SBA") is a federal

agency that provides support to entrepreneurs and small businesses. A primary mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and validity of small businesses, and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides for government backed guarantees on loans through banks, credit unions, and other private lenders.

16. One of the new programs authorized by the CARES Act was the Paycheck Protection Program ("PPP"), a loan forgiveness program designed to provide a direct incentive for small businesses to keep their workers on payroll.

17. Eligible applicants for PPP loans apply through an existing SBA lender or any other federally insured financial institution. PPP loan applications must be submitted by an authorized representative of the applicant through an SBA approved financial institution.

18. Eligible applicants must acknowledge PPP rules and make certain certifications to affirm, among other things, that the applicant business was in operation on February 15, 2020, and either had employees for whom the applicant business paid salaries and payroll taxes or paid independent contractors as reported on a Form 1099-MISC.

19. Eligible applicants must state, among other things, their average

monthly expenses and number of employees, which are used to calculate the amount of the loan the applicant may be eligible to receive. Under the PPP, the SBA will forgive all or part of loans if all employees were kept on the payroll for eight weeks and borrowers submit documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utitlities within the parameters established under the PPP.

**Allison Baver Entertainment, LLC**

20. On or about October 9, 2019, Allison Marie Baver ("Baver") formed ABE, listing herself as the sole member and owner.

21. Sometime later, on or about July 9, 2020, the FBI became aware that ABE received a PPP loan totalling $10 million based on its claim to have saved 430 jobs, even though ABE's website identified only three employees and did not appear to have any active ongoing business activities.

22. A subsequent investigation confirmed that Baver submitted multiple PPP loan applications as an authorized representative of ABE.

**ABE's PPP Loan Application**

23. On or about April 25, 2020 ("Meridian Application"), Baver submitted a PPP loan application to Meridian Bank, seeking up to $10 million in a PPP loan

from Meridian Bank.[1]

24. The PPP loan application provides the following instructions regarding how to calculate average monthly payroll:

> For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 due February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

25. Baver made or caused to be made the following false statements on the Meridian Application:

   a. ABE's average monthly payroll was $4,770,583, when in fact ABE had no average monthly payroll; and

   b. ABE had 430 employees, when in fact ABE had no employees.

**ABE's Receipt of the PPP Loan Funds and the Transfer of Funds**

26. On or about April 25, 2020, Meridian Bank approved ABE for a $10

---

[1] The Indictment returned in the Parallel Criminal Proceeding identifies six additional PPP loan applications submitted by Baver on behalf of ABE. These applications were submitted through Lendio, Inc., which offers clearinghouse services for small businesses seeking various types of financing. Each of these PPP loan applications contained materially false statements regarding ABE's average monthly payroll and number of employees.

million PPP loan based upon the false statements included in the Meridian Application submitted by Baver.

27.  Thereafter, on or about May 11, 2020, Baver opened several Meridian Bank accounts for ABE, which are identified as Defendant Properties in subparagraphs 9(b)-(d) of this complaint. These three accounts were under the named of ABE and owned solely by Baver.

28.  On or about May 11, 2020, Meridian Bank deposited $10 million into the Meridian Bank account ending in 2022, which is identified as a Defendant Property in subparagraph 9(c) of this complaint.

29.  On or about May 12, 2020, Baver transferred $9,999,500 from Meridian Bank account ending in 2022, identified as a Defendant Property in subparagraph 9(c) of this complaint, into Meridian Bank account ending in 8439, which is identified as a Defendant Property in subparagraph 9(b) of this complaint.

30.  On or about May 12, 2020, Baver opened FIB account ending in 4629, which is identified as a Defendant Property in subparagraph 9(a) of this complaint.

31.  On or about June 15, 2020, Baver transferred $5,000,000 from Meridian Bank account ending in 8439, identified as a Defendant Propery in subparagraph 9(b) of this complaint, to FIB bank account ending in 4629, identified as a Defendant Property in subparagraph 9(a) of this complaint.

32. On or about July 23, 2020, Baver transferred $150,000 from Meridian Bank account ending in 8439, identified as a Defendant Property in subparagraph 9(b) of this complaint, to Meridian Bank account ending in 2022, identified as a Defendant Property in subparagraph 9(c) of this complaint.

33. On or about July 27, 2020, Baver transferred $4,000,000 from Meridian Bank account ending in 8439, identified as a Defendant Property in subparagraph 9(b) of this complaint, to FIB bank account ending in 4629, identified as a Defendant Property in subparagraph 9(a) of this complaint.

34. From May 11, 2020, to July 31, 2020, Baver conducted numerous banking transactions and intra-account transfers between the three Meridian Bank accounts identified as Defendant Properties in subparagraphs 9(b)-(d) of this complaint.

**Investment in Company X Motion Picture**

35. On or about July 17, 2020, Baver, as CEO and owner of ABE, entered into an Investment Agreement & Term Sheet ("Term Sheet") with Company X for investment $150,000 to finance the production of a motion picture entitled "No Man of God." The investment was for a term of 18 months from the date of funding.

36. Under the Term Sheet, Company X agreed to pay ABE at the end of the 18-month term, $150,000 for the initial financing, plus a premium of 20%, for a total

recoupment of ABE's initial investment of $180,000. The agreement with Company X also provided for the contingent payment to ABE of 10% of the net profits, if any, of the project.

37. Prior to entering the Term Sheet, Baver, as CEO and owner of ABE, signed a Collection Account Management Agreement ("Collection Agreement") for "No Man of God" with Fintage Collection Account Management B.V. ("Fintage Collection"). The Collection Agreement states that Fintage Collection will act as the representative of all agreed parties, receive all revenues derived from the exploitation of the movie, and allocate and pay the parties according to the terms and conditions of the Collection Agreement.

38. On July 23, 2020, Baver transferred $150,000 of ABE's PPP loan funds from Meridian Bank account ending in 8439, identified as a Defendant Property in subparagraph 9(b) of this complaint, to Company X for the purpose of investing in the moving, "No Man of God"

39. The CARES Act does not include financial investments as an approved use of PPP loan funds.

**Seizure of Defendant Property**

40. On October 9, 2020, the FBI, pursuant to a seizure warrant, seized $9,014,832.76 from FIB account ending in 4629.

41. On October 9, 2020, the FBI, pursuant to a seizure warrant, seized $521,888.19 from the three Meridian Bank accounts ending in 8439, 2022, and 4101.

42. In conjunction with the Parallel Criminal Proceeding described herein, the United States obtained a restraining order pursuant to 21 U.S.C. § 853(e) against the PPP loan funds, and any and all accruals therefrom, invested by Baver with Company X, and as more fully described in subparagraph 9(e) and Paragraphs 35-39 of this complaint.

**Parallel Criminal Proceeding**

43. On December 15, 2021, the Grand Jury returned an Indictment against Baver in the Parallel Criminal Proceeding identified in Paragraph 10 of this complaint.

44. In the Parallel Criminal Proceeding, /Baver is charged with 8 counts of making false statements in violation of 18 U.S.C. § 1014, including for the conduct relating to obtaining a PPP loan described herein.

45. In the Parallel Criminal Proceeding, Baver is also charged with one count of Money Laundering in violation of 18 U.S.C. § 1957 stemming from Baver's conduct in investing $150,000 in PPP loan proceeds with Company X as more fully described at paragraphs 35-39 herein.

46. The Indictment in the Parallel Criminal Proceeding includes a Notice

of Forfeiture for the Defendant Properties identified herein.

47.     The Indictment in the Parallel Criminal Proceeding also includes a finding by the Grand Jury that the Defendant Properties identified herein would be subject to forfeiture in the event of conviction.

### FIRST CLAIM FOR RELIEF
18 U.S.C. § 981(a)(l)(C)
(Wire Fraud Forfeiture)

48.     The United States incorporates paragraphs 1-47 as though fully set forth herein.

49.     Under 18 U.S.C. § 981(a)(l)(C) "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C. §] 1956(c)(7)" is forfeitable to the United States.

50.     "Specified unlawful activity" is defined at 18 U.S.C. § 1956(c)(7), *inter alia*, as "any act or activity constituting an offense listed in [18 U.S.C. §] 1961(1)." *See* 18 U.S.C. § 1956(c)(7)(A). Wire fraud in violation of 18 U.S.C. § 1343 is a listed offense under section 1961(1) and, therefore, a specified unlawful activity for purposes of forfeiture under 18 U.S.C. § 981(a)(1)(C).

51.     Specifically, 18 U.S.C. § 1343 provides:

>    Whoever, having devised or intending to devise any

scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice shall be guilty of a crime.

52. ABE and Baver, having devised or intending to devise a scheme or artifice to defraud and for obtaining money or property through PPP loans by means of false or fraudulent pretenses, representations, or promises, used or caused someone to use the wire in interstate or foreign commerce for the purpose of executing such scheme and artifice, in violation of 18 U.S.C. §§ 1343, and 2.

53. Baver, through ABE, participated in a scheme to cause Meridian Bank to authorize a PPP loan equaling $10 million to ABE using wire communications to transfer funds from Meridian Bank to ABE business accounts.

54. Therefore, the Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as property constituting, or derived from, proceeds of a violation of section 1343.

**SECOND CLAIM FOR RELIEF**
18 U.S.C. § 981(a)(l)(C)
(Loan Application Fraud)

55. The United States incorporates paragraphs 1-54 as though fully set forth herein.

56. Under 18 U.S.C. § 981(a)(l)(C) "any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section …1014" is forfeitable to the United States.

57. Specifically, 18 U.S.C. § 1014 prohibits, *inter alia*, any entity or individual from "knowingly mak[ing] any false statement or report… for the purpose of influencing in any way the action of… any institution the accounts of which are insured by the Federal Deposit Insurance Corporation … upon any application" for a loan.

58. Baver, individually and through ABE, knowingly made false statements and reports in PPP loan application documents for the purpose of influencing Meridian Bank, an FDIC insured entity, to extend a PPP loan to ABE.

59. Therefore, the Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as property constituting, or derived from, proceeds of violations of section 1014.

### THIRD CLAIM FOR RELIEF
18 U.S.C. § 981(a)(l)(A)
(Money Laundering)

60. The United States incorporates paragraphs 1-59 as though fully set forth herein.

61. Under 18 U.S.C. § 981(a)(l)(A) "any property, real or personal,

15

involved in a transaction or attempted transaction in violation of section…1957" is forfeitable to the United States.

62. Specifically, 18 U.S.C. § 1957 prohibits, *inter alia*, any entity or individual from "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity."

63. Section 1957(f) defines the term "monetary transaction" to mean "the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument… by, through, or to a financial institution…"

64. After receiving the PPP loan funds from Meridian Bank, Baver, through ABE, from May 11, 2020 to August 31, 2020, conducted numerous banking transactions and intra-account transfers between both Meridian Bank and FIB accounts. Deposits, withdrawals, and transfers are monetary transactions under 1957(f), and the total of all the transfers made by ABE and Baver was over $10,000.

65. Therefore, the Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as property constituting, or derived from, proceeds of violations of section 1957.

## FOURTH CLAIM FOR RELIEF
18 U.S.C. § 981(a)(l)(A)
(Money Laundering)

66.     The United States incorporates paragraphs 1-65 as though fully set forth herein.

67.     Under 18 U.S.C. § 981(a)(l)(A) "any property, real or personal, involved in a transaction or attempted transaction in violation of section…1957" is forfeitable to the United States.

68.     Specifically, 18 U.S.C. § 1957 prohibits, *inter alia*, any entity or individual from "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity."

69.     Section 1957(f) defines the term "monetary transaction" to mean "the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument… by, through, or to a financial institution…"

70.     After receiving the PPP loan funds from Meridian Bank, Baver, through ABE, made an investment of $150,000.00 with Company X to produce the motion picture "No Man of God" for a return on the initial investment plus a certain percentage of the earnings. Deposits, withdrawals, and transfers are monetary

17

transactions under 1957(f), and the transfer made by ABE and Baver was over $10,000.

71.   Therefore, the Defendant Property identified at subparagraph 9(e) of this complaint is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as property constituting, or derived from, proceeds of a violation of section 1957.

## **REQUEST FOR RELIEF**

WHEREFORE, the United States respectfully asserts there is reasonable cause to believe Defendant Properties identified herein are forfeitable to the United States under 18 U.S.C. §§ 981(a)(1)(C) and 981(a)(1)(A). Accordingly, the United States respectfully requests:

A. That notice of this action be given to all persons known or thought to have an interest in or right against the properties;

B. That the Defendant Properties be forfeited and condemned to the United States of America;

C. That the Court decree, confirm, enforce, and enter an Order of Forfeiture as to Defendant Properties to the United States of America; and thus, order the Federal Bureau of Investigation or other applicable federal agency, or their delegates, to dispose of the Defendant Properties as provided by law; and

D. That the Court award the United States all other relief to which it is entitled, including the costs of this action and for such other and further relief as this Court deems just and proper.

Dated this __8th__ day of February, 2022.

                                      ANDREA T. MARTINEZ
                                      United States Attorney

                                      /s/ *Mark E. Woolf*
                                      MARK E. WOOLF
                                      Assistant United States Attorneys

## **VERIFICATION**

I am a Special Agent with the Internal Revenue Service-Criminal Investigation, and declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture *In Rem*, and that the facts contained therein are based upon my personal knowledge or upon information I obtained in the course of my investigation and are true and correct to the best of my knowledge and belief.

Executed on this __8th__ day of February, 2022.

*[signature]*

Jeff Kirkwood
IRS-CI Special Agent